**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

BILLY GENE JEFFERSON, JR.,

      Petitioner,

        v.

NICOLE CHISOLM,

      Respondent.

CIVIL ACTION NO.: 2:25-cv-53

## REPORT AND RECOMMENDATION

Petitioner Billy Jefferson ("Jefferson"), who was incarcerated at the Federal Correctional Institution-Satellite Low in Jesup, Georgia, filed a 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. Doc. 1. Respondent filed a Motion to Dismiss Jefferson's Petition, and Jefferson filed a Response. Docs. 8, 10. Jefferson filed a Motion for Summary Judgment, Motion for Request for Ruling, and a Motion to Strike. Docs. 11, 13, 16. For the following reasons, I **RECOMMEND** the Court **GRANT in part** and **DENY in part** Respondent's Motion to Dismiss, **DISMISS in part** and **DISMISS without prejudice in part** Jefferson's Petition, and **DENY as moot** all other Motions.[1] I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Jefferson *in forma pauperis* status on appeal.

---

[1] Jefferson does not seek any additional or different relief in his Motion for Summary Judgment than he does in his Petition. Compare Doc. 11 with Doc. 1. Given the recommended disposition on Jefferson's Petition and Respondent's Motion to Dismiss, the Court need not address Jefferson's summary judgment motion separately.

**BACKGROUND**

Jefferson was convicted in the District Court for the Eastern District of Virginia of: major fraud against the United States, in violation of 18 U.S.C. § 1031; engaging in unlawful monetary transactions, in violation of 18 U.S.C. § 1957; unlawful transfer of a false identification document, in violation of 18 U.S.C. § 1028(a)(2) and (b)(1); and aggravated identity theft, in violation of 18 U.S.C. § 1028(a)(1).  Doc. 8 at 2; Doc. 8-1 at 7–8.  That court sentenced Jefferson to 20 years' imprisonment, to be followed by 3 years' supervised release.  Doc. 8 at 2.  On September 7, 2022, Jefferson was transferred to home confinement under the residential reentry center ("RRC") operated by Dismas Charities in Savannah, Georgia.  Doc. 1 at 3; Doc. 8 at 2.  On December 12, 2024, President Joseph Biden commuted Jefferson's sentence, calling for Jefferson's sentence of confinement to expire on April 11, 2025, but leaving all other terms of his sentence and supervised release in place.  Doc. 8 at 3; Doc. 8-1 at 3, 7, 45.  Jefferson was released from the Bureau of Prisons' ("BOP") custody on April 11, 2025, just after filing this Petition.  Doc. 8 at 2.

In his Petition, Jefferson asserts that he is entitled to have his earned time credits under the First Step Act ("FSA") credited toward the first year of his supervised release.  Doc. 1-4 at 6.  Jefferson also asks the Court to shorten, modify, or terminate the balance of his supervised release term under 18 U.S.C. § 3583(e).  Id.

Respondent contends that this Court should dismiss Jefferson's Petition.  Doc. 8.  Respondent states the BOP does not have the authority to modify Jefferson's term of supervised release under the FSA.  Id. at 4–9.  In addition, Respondent states that this Court cannot modify

2

the terms of Jefferson's supervised release, as only the sentencing court has the authority to do so.[2] Id. at 10–11.

## DISCUSSION

**I.      The BOP Cannot Modify Jefferson's Supervised Release Terms Under the FSA**

Jefferson states he is challenging the lack of credit against his supervised release, as he accumulated at least 365 days of earned time credits under the FSA. Doc. 1-4 at 2. According to Jefferson, the BOP should apply the 365 days of earned credits "as a means of satisfying the first year of his three[-]year term of supervised release." Doc. 1 at 2, 5, 8. Jefferson also states that there is no evidence that he forfeited his earned credits, yet he did not receive any credits to which he was entitled. Doc. 10 at 2–3, 13.

Respondent acknowledges that Jefferson earned 365 days of time credits toward his early transfer to supervised release. Doc. 8 at 5. Respondent also notes that Jefferson has been released from BOP custody, as his sentence of confinement expired on April 11, 2025. Respondent states that Jefferson is under a probation officer's supervision "under conditions specified by the sentencing court." Id. Respondent argues the BOP cannot transfer Jefferson or "somehow retroactively determine that it had transferred [Jefferson] to begin his supervised release at an earlier date." Id. To do so, Respondent maintains, would be to effectively shorten Jefferson's term of supervised release, and the Eleventh Circuit Court of Appeals has determined that excess time credits under the FSA cannot be applied to reduce a supervised release term. Id.

---

[2]      Respondent argues that only the sentencing court has jurisdiction to modify Jefferson's terms of supervised release, but Respondent does not otherwise argue that this Court lacks jurisdiction to adjudicate Jefferson's Petition. This is noteworthy, as Jefferson may no longer be "in custody" for the purposes of § 2241, given that he is now on supervised release. On the other hand, under Jefferson's view of the facts, it appears that Jefferson was in BOP custody (specifically, home confinement) at the time he filed his Petition and up through April 11, 2025. Thus, jurisdiction likely existed then and very well may persist now. But, again, Respondent has not made any other jurisdictional challenge.

at 6 (quoting <u>Guerriero v. Miami RRM</u>, No. 24-10337, 2024 WL 2017730 (11th Cir. May 7, 2024)). Respondent asserts that the commutation order specified that Jefferson's sentence of confinement was set to expire on April 11, 2025, a fixed date, and did not serve to reduce Jefferson's sentence by a specific amount of time. Thus, the BOP could not have released Jefferson to supervised release prior to April 11, 2025, based on the application of earned credits or anything else. <u>Id.</u> at 9.

Under the FSA, eligible prisoners can earn time credits against their sentences. 18 U.S.C. §§ 3624(g), 3632(d)(4). "Section 3632(d)(4)(C) provides that the BOP can apply these FSA time credits to either lengthen an eligible prisoner's prerelease custody, such as home confinement or half-way house placement, or to advance transfer to supervised release." <u>Guerriero v. Miami RRM</u>, No. 24-10337, 2024 WL 2017730, at *1 (11th Cir. May 7, 2024) (citing § 3632(d)(4)(C)). "However, under § 3624(g)(3), 'the Director of the [BOP] may transfer [a] prisoner to begin any term of supervised release at an earlier date, *not to exceed 12 months*, based on the application of [FSA] time credits under section 3632.'" <u>Id.</u> (quoting § 3624(g)(3)); and then quoting 28 C.F.R. § 523.44(d)(3) ("The [BOP] may apply FSA Time Credits toward early transfer to supervised release under 18 U.S.C. § 3624(g) only when . . . [t]he application of FSA Time Credits would result in transfer to supervised release *no earlier than 12 months* before the date that transfer . . . would have otherwise occurred.") (emphases in original).

The Eleventh Circuit has found that § 3632(d)(4)(C) does not allow the BOP to apply a prisoner's FSA time credits to his period of supervised release. <u>Id.</u> (citing § 3632(d)(4)(C)). Instead, the court determined that § 3632(d)(4)(C) means "that the FSA time credits are to be used to reduce incarceration time so as to accelerate the beginning of the supervised released

4

time that was imposed at sentencing . . . ."[3]  Id. at *3.  Many courts that have considered whether § 3632(d)(4)(C) allows the BOP to apply earned credits against an imposed term of supervision have determined that this statute does not.  Id. (collecting cases but recognizing one court has not agreed with its interpretation); see also Hargrove v. Healy, 155 F.4th 530, 534–35 (6th Cir. 2025) (observing that "plenty of caselaw supports" the conclusion that FSA time credits "help a prisoner to *start* his term of supervised release at an earlier date, not *end* his term of supervised release at an earlier date[]" and collecting cases, including Guerriero), petition for cert. filed, No. 25-818 (Jan. 8, 2026).

It appears that the majority of courts considering this issue have reached the same conclusion as Guerriero, but there is an opposing line of cases.  For example, Jefferson relies on Rivera-Perez v. Stover, 757 F. Supp.3d 204, 212–13 (D. Conn. 2024).  Doc. 1 at 13.  In Rivera-Perez, the district court concluded that earned FSA credits could be used to reduce an inmate's period of supervised release.[4]  Additionally, the Ninth Circuit Court of Appeals has recognized a split in authority and has concluded that "Congress intended for the FSA's earned time credits to reduce a prisoner's supervised release term."  Gonzalez v. Herrera, 151 F.4th 1076, 1081 (9th

---

3       Section 3632(d)(4)(C) provides:

> Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release.  The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

In reaching the conclusion that § 3632(d)(4)(C) does not allow the application of FSA time credits to a period of supervised release, the Eleventh Circuit noted the second sentence of this statute "clearly indicates that Congress meant that the time credits" are to be applied to transfer a prisoner into pre-release custody or supervised release.  Guerriero v. Miami RRM, No. 24-10337, 2024 WL 2017730, at *2 (11th Cir. May 7, 2024).

4       The Sixth Circuit Court of Appeals rejected the reasoning in Rivera-Perez, noting that the reasoning "works only if you read each sentence [of § 3632(d)(4)(C)] in isolation[.]"  Hargrove v. Healy, 155 F.4th 530, 535 (6th Cir. 2025).

Cir. 2025) (noting, but disagreeing with, the Eleventh Circuit opinion in <u>Guerriero</u>); <u>see also</u> <u>Dyer v. Fulgam</u>, No. 1:21-CV-299, 2022 WL 1598249, at *3 (E.D. Tenn. May 20, 2022) ("[T]he unambiguous, mandatory language of [§ 3632(d)(4)(C)] provides that earned-time credits may be applied to a term of supervised release.").[5]

Jefferson makes some compelling arguments, but these arguments are ultimately unconvincing. Jefferson's reliance on § 3632(d)(4)(C) to have earned credits applied toward his term of supervised release is misplaced. Based on the terms of his original sentence, Jefferson had a statutory release date of February 26, 2031, via good conduct release, and a release date of February 26, 2030, via FSA release (application of 365 days' earned credits). Doc. 8-1 at 12. Thus, the BOP had applied the entirety of Jefferson's credits under the FSA against his sentence, as required. Once President Biden commuted Jefferson's sentence, his sentence ended on a date specific—April 11, 2025—and he was released from the BOP's custody that day. The commutation order specifically provides that all other terms and conditions of Jefferson's sentence apply, including any term of supervised release the trial court imposed. Doc. 8-1 at 45; <u>see</u> 18 U.S.C. § 3621(a) ("A person who has been sentenced to a term of imprisonment . . . shall be committed to the custody of the Bureau of Prisons until the expiration of the term imposed."). The BOP then recalculated Jefferson's sentence in light of the terms of the commutation order. Doc. 8 at 8 (quoting 28 C.F.R. § 571.41(c)(1), which requires the BOP to recalculate a sentence "in accordance with the terms of the commutation order[]"); <u>see also</u> <u>Schanck v. United States</u>, No. 2:18-cv-0175, 2018 WL 5906070, at *3 (E.D. Cal. Nov, 9, 2018) (rejecting petitioner's

---

[5]    Jefferson relies on <u>Woolsey v. Washington</u>, No. 2:25-CV-137, 2025 WL 2598794, at *7 (M.D. Ala. Sept. 8, 2025), but the court in that case was dealing with different issues: subject matter jurisdiction under § 2241; the jurisdictional bar in § 3625; and whether inmates have protected liberty interests in application of FSA credits. Because those issues are not presently before the Court, there is no need to address Jefferson's arguments based on <u>Woolsey</u>.

argument that the BOP did not calculate sentence properly to account for good conduct time credits against sentence expiring on a date certain due to grant of executive clemency and finding respondent's explanation that reference to good conduct time credit in petitioner's record was administrative and did not mean petitioner was eligible to earn these credits for computing a release date different than what the President ordered).  If the Court accepted Jefferson's argument, then his term of supervised release to have started before the expiration of his sentence on April 11, 2025.

In addition, while this Court recognizes that Guerriero is not controlling because it is an unpublished opinion, the Eleventh Circuit stated clearly in that decision that "Congress intended" § 3624(g)(3) time credits "to be used to reduce incarceration time so as to accelerate the beginning of prerelease custody or supervised release."  2024 WL 2017730, at *3.  In doing so, the Eleventh Circuit looked at statutory construction principles, including the title of this statute. Id. at *2 & n.2 (looking at the title of § 3632(d)(4)(C)—"Application of time credits toward prerelease custody or supervised release"—and noting the Supreme Court "'has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning on a statute.") (quoting Dubin v. United States, 599 U.S. 110, 120–21 (2023)).  Further, the Eleventh Circuit noted other courts within the Eleventh Circuit considering the same issue have come to the same conclusion.  Id. at *3 (collecting cases).

Jefferson's attempt to distinguish his claims from those presented in Guerriero is unconvincing.  Jefferson states that, unlike the petitioner in Guerriero—who wanted his credits in excess of 365 days to be applied to reduce his term of supervised release—he (Jefferson) only wants application of the 365 days of credit he earned.  Doc. 10 at 13.  Jefferson also states that the Guerriero petitioner received every credit he was entitled to, yet Jefferson did not receive

even one day's credit to which he is entitled.  Id.  Jefferson is correct that the facts of Guerriero were different, but the distinctions are immaterial and do not make Guerriero any less persuasive. In Guerriero, the court explained that the language of § 3624(g) only allows for FSA credits to be applied to reduce incarceration time to speed up the start of a supervised release term.  2024 WL 2017730, at *3.  None of the factual distinctions that Jefferson highlights make that conclusion any less persuasive in this case.

Because § 3624(g)(3) credits cannot be applied to reduce a term of supervised release under this Circuit's heavily persuasive authority, the Court should **GRANT** this portion of Respondent's Motion to Dismiss.

**II.**      **This Court Can Modify Jefferson's Supervised Release Terms**

Jefferson asks that this Court modify the terms of his supervised release under 18 U.S.C. § 3583(e), which would result in the termination of the balance of his supervised release term. Doc. 1-4 at 6.  Respondent states that only the sentencing court can shorten Jefferson's supervised release term, not this Court.  Doc. 8 at 10.

Section 3583(e)(2) of Title 18 of the United States Code authorizes a sentencing court to modify a term of supervised release, after consideration of the sentencing factors found in 18 U.S.C. § 3553(a).  See also 18 U.S.C. § 3583(a) ("The court, in imposing a sentence to a term of imprisonment for a felony . . ., may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . ."); id. § 3583(e)(1) (allowing the sentencing court to terminate a term of supervised release and to discharge the defendant "at any time after the expiration of one year of supervised release," so long as certain conditions are met).  Only the court that sentenced a petitioner can "modify, reduce, or enlarge the conditions of supervised release."  Mathis v. United States, Case No. 8:19-cv-2599, 2019 WL 5535220, at *1 (M.D. Fla. Oct. 24, 2019) (quoting Eleazar v. Menifee, No. 05 Civ. 533, 2006

WL 3634382, at *2 (S.D.N.Y. Dec. 13, 2006)).  In other words, a court lacks jurisdiction under § 2241 to "alter" a term of supervised release if that court is not the sentencing court, as such a determination "falls exclusively within the authority" of the sentencing court.  Salyer v. Young, Case No. 5:19-cv-00875, 2020 WL 6145035, at *5 (S.D.W. Va. July 29, 2020), adopted by, 2020 WL 6142254 (S.D.W. Va. Oct. 19, 2020); see also Roberts v. Cordova, Civil Action No. 2:25-CV-00074, 2025 WL 2823130, at *3 (S.D. Tex. Aug. 15, 2025) (finding court lacked jurisdiction under § 2241 to alter term of supervised release because another court sentenced petitioner), adopted by, 2025 WL 2822005 (S.D. Tex. Oct. 3, 2025).  However, a sentencing court "may transfer jurisdiction over a . . . person on supervised release to the district court for any other district to which the person is required to proceed[,]" and a "court to which jurisdiction is transferred . . . is authorized to exercise all powers over the . . . releasee that are permitted" by statute.  18 U.S.C. § 3605.

The District Court for the Eastern District of Virginia is the court that sentenced Jefferson, but Jefferson has been transferred to this District for his term of supervised release.  However, Jefferson presents nothing showing this Court has the ability to provide his requested relief, in the form of FSA credits being applied against his term of supervised release term, because this Court must follow the unequivocal statements of the Guerriero court: § 3624 does not allow for such an application.  In other words, while this Court may have jurisdiction over Jefferson's supervised release term, it cannot provide Jefferson with his requested relief.  The Court should **DENY** this portion of Respondent's Motion to Dismiss but **DISMISS without prejudice** this portion of Jefferson's Petition, as he could file a proper motion for reduction or modification of his supervised release term, separate from this § 2241 Petition, and the parties could fully brief the matter.

### III.    Leave to Appeal *in Forma Pauperis*

The Court should also deny Jefferson leave to appeal *in forma pauperis*.  Though Jefferson has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Jefferson's Petition and Respondent's Motion to Dismiss and Jefferson's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** *in forma pauperis* status on appeal.

10

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Respondent's Motion to Dismiss, **DISMISS in part** and **DISMISS without prejudice in part** Jefferson's Petition, and **DENY as moot** all other Motions.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Jefferson *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made herein.  Objections not meeting the specificity requirement set out above will not be considered by the District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by

or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 17th day of February, 2026.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA